And the next case is Arlene Roth v. Nationstar Mortgage. Mr. Fineland is here for Roth, and Mr. Godley for Nationstar. And Mr. Fineland, when you're all situated there, give everybody an opportunity to get to counsel's table. Mr. Fineland. Good morning, Your Honors. You may begin. May it please the Court. A debtor discharged in bankruptcy has a right to be free from creditor's efforts designed to coerce, pressure, or otherwise attempt to collect discharge debts. My name is David Fineland, along with my associate, Joseph Petempio, who is at the counsel's table representing Ms. Arlene Roth. In the appeal of the denial of her motion for sanctions against Nationstar Mortgage for violations of her bankruptcy discharge by attempting to coerce her to pay a discharge debt, it's Ms. Roth's position that the Bankruptcy Court erred in denying her motion without first requiring an evidentiary evidence or any type of evidentiary hearing to the contrary of her assertions in the motion for sanctions. Effectively, the Bankruptcy Court treated this response that was filed as a motion to dismiss or motion for summary judgment if we look at the motion for sanctions as the complaint of the case. Well, the bankruptcy judge looked at the disclaimer on the information statement. The disclaimer says that this information, this is just for informational purposes only, I'm reading for it, and is not an attempt to collect a debt. It's pretty conspicuous and unambiguous. How much weight should be given to the fact that the disclaimer says this is not an attempt to collect a debt? I mean, how do we say that the bankruptcy judge erred when that information is so conspicuous and unambiguous? Thank you, Your Honor. And to not completely disagree with you, I would argue that it is, in fact, ambiguous language. I would, in fact, argue that it was likely intentionally ambiguous by NationStar, but we don't have factual evidence to get there yet because we were denied an opportunity for an evidentiary hearing. You didn't ask for one. Well, Your Honor, we, honestly, we filed the motion, the response was filed, a preliminary hearing was held, and she denied the motion. There was no, if we look at 90, I believe it's 9014, of the bankruptcy rules, they treat these motions of bankruptcy court as contested matters, which then follow the rules of effectively many trials under Rule 7000s, and you basically need to treat the motion for sanctions as a complaint, and the response as what it may be, either an answer or a motion. An evidentiary hearing is automatic? You don't have to ask for one? It's our position that we have assertions against the one party, representations of counsel not sworn, not verified, no affidavits in the response, and the court makes factual findings. Well, that's not the way our system works. You have a preliminary hearing, you set the matter out if there's factual questions for either filing a summary judgment to determine the issue by hearing, and have a trial to determine what the facts are, and then make a ruling as how those facts, how the law applies to those facts. That's not something that needs to specifically be requested. That's just the way our system works. She effectively just denied the motion, and that was it. The, going back to the issue of the ambiguity that I read in the statement, if you stop short in their statement, this statement is sent for the informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you, or as a demand for payment from any individual protected by the United States Bankruptcy Code. That's pretty unambiguous, but the paragraph continues, and it begins with the first word, if this account is active or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect a debt. Well, does NationStar not know whether Ms. Ross' account has been discharged in bankruptcy or not? Why is it her obligation to determine what does NationStar mean when it sends this to me? Nation, she's not asking for this. She knows that she was discharged in the bankruptcy court. But she's not supposed to be getting any type of communications that would have the effect of coercing her to pay a debt, and let's not look at Ms. Ross in particular. Let's look at any bankruptcy debtor in the world of bankruptcy. They may not know whether this was discharged or not. Any bankruptcy debtor would know they have been through bankruptcy. Respectfully, Your Honor, I represent a lot of bankruptcy clients, and a lot see these things and come to my office steaming saying, I thought we took care of this. That's not the way bankruptcy debtors think. They see these bills come. They see these debts come. They think they have been resolved and don't anticipate receiving them anymore after bankruptcy, and they just keep coming. The thing that seems to me to be the most persuasive factor against your position is the fact that this disclaimer is so close to that fashion by the Consumer Finance Protection Board, a bureaucracy and an agency that's designed to protect persons against deceptive practices in this kind of area, and they suggest almost this to send notices to the debtor, even a discharged debtor, as long as it's not deceptive with respect to the collection of the debt against the debtor as opposed to the property. In other words, the mortgagee is entitled to remind the person that if he wants to keep this property, he or, in this case, she, can resume the payments and retain the property. Understood, Your Honor, and let me address both. You raised actually two points that I want to address in my argument here. The first is, again, going back to the ambiguity position that I was with respect to what you stated as well, you believe that it's very close to the language of the CFBP. I'll call it that for purposes of speed, but again, this paragraph by NationStar begins the next sentence in that with, if this account is active. It's not telling the debtor that your account, it's not definitive, it's not unequivocal, it's ambiguous. And then it states that NationStar reserves the right to exercise its legal rights. As a debtor, as a bankruptcy debtor counsel, what legal rights are they referring to is what's going on in the debtor's minds. They don't know what that means. Including, but not limited to, foreclosure of its lien interest. That's precisely what the CFPB suggested disclaimer says. It doesn't say, but not limited to, but it says the creditor retains its rights under its security instrument, including the right to foreclose. Including means there are other rights, so it's actually the same thing. But it's not, and the devil is always in the details. It does not say, but limited to. What it says is, and this is the CFPB sample, our records show that either you are a debtor in bankruptcy or discharge your personal liability for your mortgage loan in bankruptcy. Unequivocal. It's not if, it's unequivocal. Our records show that you are discharged of this debt. We are sending this statement to you for informational and compliance purposes only. It is not an attempt to collect a debt from you. Okay, so NationStar knows that this exists. They in fact reference it. This is, we have similar language in our disclaimer, but it's not similar. NationStar tries to make it more confusing and leave it open in case you're not discharged. We're not going to put our foot down and say that we're taking a position on your loan. We're just going to say if your loan has been discharged. We're going to leave it to the debtor, the person that's supposed to be protected by the discharge to figure all this out. So the presence of what you're reading through now, what you're arguing is ambiguous. It's not as definitive as the CFPB is going to undercut the fact that this is labeled an informational statement, that it has, that it does have disclaimer language, that it has a voluntary payment coupon. So for you, even though these are pretty clearly labeled informational statement, because there is a box under there that does not comply exactly with the CPFB, CFPB, that that's enough to push it into coercive? What I would venture to say, to be honest, is when you get the envelope and you open it up and you're a debtor and you pull this thing up, what does it look like? It looks like a bill. It quacks like a bill. It talks like a bill. But you don't dispute that NationStar could have sent some communication to your client alerting her that she could, in fact, get this property back if she voluntarily resumed these communications. Correct. What I would venture to say is that NationStar or any creditor can send correspondence that would inform a debtor about something that they needed to have information about, but they can't design it in a way that would coerce payment or make an otherwise voluntary payment, which the debtors can voluntarily repay debt that's under 524-F, but that's any debt. It's not just mortgages. I mean, if we were here today on a credit card debt and these informational statements were coming, I don't think we'd be at this court. I think the bankruptcy judge would have just scoured the credit card company. But why are we treating mortgage companies different? Now, they're going to say that the TILA and the CFPB regs allow them to do this, but they really don't. The CFPB says if the property was surrendered in bankruptcy, it's not exempt from these regulations. It doesn't need to comply. If they request in writing, they don't need to send them. Yet NationStar wants to say, if you give us a phone call, we'll stop. Well, if they're required to send them, how does a phone call solve that? And it also begs the question, why are you willing to go around the CFPB regulations where they require a writing to cease and say we're going to allow it by phone call? What happens on these phone calls? Do you pressure the debtor more on the phone? I don't know. We didn't have an opportunity for evidence to find that out. So I think NationStar, with respect to just going outside of clear language, direct language, by putting the ball in the debtor's court to figure it out, it's not proper. It's a violation of the bankruptcy discharges. Let me ask you this. Yes. I cannot imagine that in the bankruptcy proceedings itself, she said she was going to surrender. That was in the plan. Why wasn't a quitclaim deed executed as part of the bankruptcy proceeding? And even more so, when you settled after the first motion for sanctions, why was there not a quitclaim deed? Did your client offer to execute a quitclaim deed? I don't know whether she was offered that, Your Honor. What I can say is that there is case law that says you cannot force a secured creditor to take back the property. The debtors basically just have to walk away and hope that gets done. And the problems can arise from that, which we don't need to get into today, but bottom line, they can't force the secured creditor to take the property back, so the plan can't provide for the... But were you representing her at the time? We were the firm that was the bankruptcy firm. If you're trying to stop these things, why didn't you say in that first, at least when the first sanctions came along, look, we don't have any interest in this property anymore. Here's a quitclaim deed. We did, Your Honor, and we got an agreement they would no longer seek to try to collect on the debt, and then subsequently they changed... Are you telling me if we should send this back for an evidentiary hearing, it will show that you offered a quitclaim deed? It won't show we offered a quitclaim deed. We had a settlement agreement. It was attached into the record. It was agreed that they would no longer try to collect from her, and then subsequently they continued sending statements. But you didn't offer a quitclaim deed. That was my question. Your Honor, I was not involved in the negotiation, so I can't say. I know there was not one that was given. Whether that was discussed, I can't say. But my time is up. That's a question I don't have an answer to, so I apologize. All right. You've reserved some time, Mr. Fineman. We'll hear from Mr. Gottlieb. Good morning. Mark Gottlieb with Akerman LLP on behalf of Aptly Nation Star Mortgage. I don't want to lose sight of the fundamental issue before this Court, and that issue is whether the bankruptcy court in this case abused its discretion in concluding that Nation Star's November 18, 2015 mortgage loan statement was not an attempt to collect the debt, did not violate the discharge injunction of 524, and did not warrant the imposition of civil contempt sanctions. Did the bankruptcy judge apply a test? The First Circuit has a test in Bates v. City Mortgage, doesn't it? The bankruptcy court applies a test. They applied the Hardy test, and this Court applied that test. It applied the Bates test? The bankruptcy court in this case? The bankruptcy court applied the test set forth in Hardy for the determination of whether civil contempt sanctions for a 524 violation are justified. That test is a very straightforward test. Were you on notice of the discharge injunction, and did you intend the act that allegedly violated that injunction? That's it. Subjective intent, subjective belief, not relevant. So the Court applied that test. There was a third factor that the First Circuit applies in Bates, and that's whether or not the communication was coercive, right? Well, the test in the 11th Circuit is, on a factual level, you take those two first two elements. Were you on knowledge of the discharge injunction? Were you on notice of it? And did you intend the act that violated the injunction? Those were factual determinations, neither of which was disputed. Those were conceded. The 11th Circuit then says we should look to determine whether or not it was coercive in any way? Yes. Then the test under Hardy is an objective test. Objectively, was this the – was the effect of this communication under an objective test to pressure a payment? And the Court applied that standard, looked at this case, looked at the disclaimers, looked at lower court decisions in Hellman. The Court did not at that time have the benefit of this Court's subsequent decision in Hellman and made the determination that, objectively, this was not an attempt to pressure a payment, given the clear and prominent disclaimers that were contained in this mortgage loan statement, which were analogous to the ones that this Court blessed in the Hellman case. Yes. It's discretionary with the bankruptcy court, but the bankruptcy court can abuse its discretion if it's a coercive attempt to collect a debt, though, right? The bankruptcy court can abuse its discretion, but that's a pretty high bar. This Court has laid out that standard previously in Amlong and in other cases where the abuse of discretion standard recognizes that there's a range of possible outcomes here. On the spectrum of statements with disclaimers and the varying decisions that have been reached by courts, this statement and this disclaimer are among the most prominent that this Court could possibly look at. What if the statement, the information statement, pressures the debtor into making voluntary payments? Would that be a coercive information statement? Would that be a coercive communication? If it pressures the debtor to make you don't have to make them, but you can voluntarily make those payments? Those things seem contradictory. To pressure somebody to do something voluntarily, the pressure suggests that it's coercive, that you must do it, that you have to do it or there will be a consequence. And so I don't think that applies, but — Isn't that what this — Hmm? Well, this communication says you can make voluntary payments. In fact, it even has — it indicates an amount due. And that is something that existed in the Hellman case that this Court decided. It had an amount due and payment instructions right on the face of that statement. And this Court said on a motion to dismiss that that was not an attempt to solicit or coerce a payment. And the CFPB, in its form statements, includes a payment coupon. In fact, the CFPB statements are even less complete and fulsome than this statement because the CFPB statements, proposed statement forms that are blessed to be sent to bankrupt debtors, both in active bankruptcy and who have received a discharge, has a payment coupon that doesn't even use the word voluntary. The bottom line here is that — and they argue why are mortgage loans different. Mortgage loans are different because you have a lien that survives the discharge. And because of that lien, there are a series of communications that are necessarily going to occur. For example, Mortgage Paragraph 22 requires a default letter go out in order to prosecute a foreclosure, which the servicer retains the right to do post-discharge. That letter has to include demands for payment, amounts, due dates, all those things that tend to suggest a demand for a payment that appear to be a Dunning letter. But you have to send it to foreclose. How do you insulate it? You include a prominent statement right at the top of it. Who says you have to send it to foreclose? Truth in Lending? Is that — what law says you have to send that kind of thing to foreclose before you — It's factual. The mortgage and Florida law — I don't know whether Georgia law is similar. The mortgage says that as a prerequisite to commencing a foreclosure, which the servicer and lender retain the right to do post-discharge, you must send a notice with five different elements. The amount due to cure the default. A date by which you must pay. The consequence of your failure to pay. All of the things that appear to be a Dunning letter. You cannot go into Florida foreclosure court and prosecute a foreclosure, which you retain the right to do clearly post-discharge, without having sent that letter. So how do you navigate that? Is there a limit on the number of those letters that you can send to a debtor who's been discharged in bankruptcy? Is there a number? Is there a limit on the number of those statements that you can send? There's no — there's no express limit. How many were sent to the debtor in this case? For the purposes of this motion, a single statement. There were no other — no other statements sent to the debtor post-bankruptcy? There were a couple of statements that were the basis of a prior claim that the record reflects was settled with no admission of liability and released. This motion before this judge was predicated on the sending of a single November 18, 2015 statement that had about the most prominent disclaimers you could possibly include in these things. That disclaimer, first of all, it said informational only at the top. The disclaimer is in bold printed language. It's the very first paragraph of that statement. And it says, not only is it informational, it says specifically, this is not a demand for payment. This is not an attempt to collect a debt. You've received a discharge in bankruptcy. And this Court said quite clearly in Hellman that even the least sophisticated consumer, and that's not the standard here, but even the least sophisticated consumer is charged with certain basic knowledge. And that knowledge includes — Tell me again why you have to have the amount due? Why do you have to have the amount due? Because that's information that could be relevant to a debtor. That's information that even the CFPB says should go to a debtor, including debtors who are in active bankruptcy. So that if you want to make payments, voluntary payments, you'll know how much to make? Exactly. That's not an attempt to collect a debt? No. I missed that question and answer. Would you mind repeating it? So if the information statement has on it, this is the amount that's due? Yes. Um, that's not an attempt to collect a debt? No. And it's not an attempt to collect a debt because it provides quite clearly in front of it that it's not an attempt to collect a debt. And because the CFPB — So why is that on there? Why do you say this is how much is due? Why do you need that on the information statement? Because every day, and this Court knows it from decisions like the Fayila decision that this Court reached, that despite the fact that a debtor goes through bankruptcy, and even in those cases where a debtor might have purported to surrender in bankruptcy, they emerge from bankruptcy entitled to properties and very often either contest a foreclosure or reach out for property retention alternatives. And the CFPB has said, we think people should get information. And so servicers are put into this position of walking a tightrope between having to avoid potential liability under 524 and the FDCPA while simultaneously having this mortgage lien that still has to be serviced and enforced and has guidelines and regulations where regulators are saying, we prefer more information than less. The reason that I ask the question is because that appears to be a dispositive fact in the First Circuit. And Bates, the First Circuit, was persuaded by the fact that because there was a indication on the information statement as to the amount due that you can pay, that is sufficiently coercive to constitute an attempt to collect the debt in violation of the discharge injunction. I believe that the First Circuit's bankruptcy appellate decision in Best is actually pretty much on all fours with what happened here and what we're arguing. There were post-discharge statements that had amounts due in them and had disclaimer language, and the Court deemed those in the Best case to not be debt collection in violation of 524. And this Court in Hellman, under a lesser standard, under the FDCPA standard, which compared to 524 under the FDCPA, it's least sophisticated consumer, not just a straight objective test. It's preponderance of the evidence, not clear and convincing. It doesn't entail a scienter element like 524 entails. It's a lesser standard. And this Court looked at disclaimers similar to the disclaimers here, similar statements to those here, and said, and this was affirmance of a motion to dismiss, that those statements were not debt collection under the FDCPA. So if on the information statement you got, this is the amount due, that's not a demand for payment? Not when, no. It's informational. Not when it's preceded by. And this is exactly what the Court ruled in Hellman. Precisely. The Hellman statement, which is in the record, had amounts due. It had payment instructions. Right. And Bates, the First Circuit doesn't say if you have an amount due, that's a demand for payment? Not when you precede it with a clear and conspicuous and prominent informational-only disclaimer that says, this is not a demand for payment. This is not an attempt to collect a debt. We are just providing you with information regarding the amounts due on this loan if you are interested in reinstatement, if you are interested in property retention in lieu of foreclosure. Because guess what? We still have a lien. You still have title. And we're going to have to sue you and foreclose. So here's the info. We are not trying to collect this debt from you. We are not demanding payment. And so if including amounts is going to be deemed debt collection, then there's going to be a real problem. Because now you have the CFPB prescribing forms of statements to go out to people who are in active bankruptcy or who have received a discharge in certain circumstances. The CFPB mandates that those statements still go. And their statements are actually less, less disclosure than our statement in this case did. Those statements don't say informational-only at the top. Those statements don't, they have a payment coupon, but they don't say it's voluntary. Their disclaimer in form and substance is no different than ours. If you received a discharge, which this Court has said even the least sophisticated consumer would understand that they received a discharge and know what that discharge meant. And it says if you received that discharge, this is not an attempt to collect your debt. This is not a demand for payment. It's just to provide you with information. Should the Bankruptcy Court have held a hearing? Did the Bankruptcy Court conduct a hearing? Should it have held the evidentiary hearing? No, absolutely not. Two issues with regard to that. Number one, as the Court noted, no evidentiary hearing was ever requested. And they had ample opportunity to do so. The record reflects that this issue was fully briefed. There was a motion, a response, and a reply. The factual allegations that were contained in the motion were not refuted or disputed in any of that briefing. The fundamental key facts were not disputed at all, which is that NationStar was on notice of the discharge and NationStar engaged in the act that was alleged to violate 524. Nobody disputed that. All that was left at that stage was for the Court to apply the law and determine under the subjective test whether this statement or this disclaimer that everybody acknowledges was sent constituted an act of debt collection within the ambit of 524 as the way the case has defined it. But the other thing is the waiver issue, that they had every opportunity to request one and failed to do so. The briefing was repeated. He suggests that local rules or something else required a hearing. First of all, not even an issue raised in their initial brief. They only raised it in their reply and not an issue raised at all below. But the answer to that is no. Local rules, like to the extent that they applied the rules that would apply to a traditional adversary, to a traditional piece of litigation that have summary judgment and other things in them, only exist where you have disputed issues of fact, where there are competing affidavits or other issues raised that are competing. The fundamental facts here were never disputed. And I would just note that the briefing was completed on this in February. The Court held a February 25th hearing in which the Court announced from the bench that it would rule based on the papers. The Court then set that hearing three months later. In a notice, it said, I will now make my announcement of that ruling based on the papers at the end of May. In all that time, appellants never once argued, wait a second, we have disputed facts here. We need to say they never sought discovery. They never asked for discovery. They never filed an affidavit. They never raised a single issue about a disputed fact that mandated an evidentiary hearing. And this Court has held in other cases that evidentiary hearings are not necessarily required in every case. You need to have issues of disputed fact, and somebody has to actually have raised the issue and requested one in which they didn't. And I see my time is almost up. I just want to come back to the fundamental question here, which is abuse of discretion. Did this Court act within the range of possible outcomes? Did it apply the correct legal standards set forth by the Eleventh Circuit and Hardy? Absolutely. Was it well within its discretion in deciding that this statement, given this Court's ruling at Hellman, given the various other cases out there that have rejected similar 524 claims were informational statements with similar disclaimers were sent? And that's the bankruptcy appellate panel in the Best case. That's the District of New Hampshire in the Bates case. It's the Northern District of Bankruptcy, Georgia Bankruptcy Court in the Milley case, all of which found that similar statements, including statements that have a mountain to do, were not debt collection where they had these disclaimers. Let me ask you a couple of questions along this line. Are there laws or regulations that require regular periodic statements under a situation like this when the mortgage holder has an interest, but the debtor is discharged in bankruptcy? Yes, there are. That's all dictated by CFPB regulation. It's Regulation Z. It's 1026.41. And those regulations recently changed. In 2015, I would say it was spectacularly unclear as to whether there was an obligation to continue to send these statements post-discharge, and many servicers believe that that obligation existed. There was an exemption from sending statements because it's required, and the form and content of the statements is dictated by the regulations. There was an exemption at that time, but the exemption only extended to people who were in active bankruptcy. The directives were arguably that following a discharge, you had to resume. It was unclear, and the law on that is all over the place. In 2018, as a result of that unclarity, the lack of clarity, the CFPB clarified it and now provides specific situations, both in active bankruptcy and post-discharge, where you need to send statements. And in those instances, they've prescribed a form, and that form says, put an amount in there, put a payment coupon on there, and put this disclaimer on there, and if you do all that, you will be insulated from liability under 524 in the FDCPA because we recognize the tension between providing information and running afoul of those statutes. And this information, these disclaimers, sending it in this form will insulate you. The disclaimers in this case, the form of the statement in this case, is at least as good as, if not better than the prescribed CFPB form, and at least as good as the forms that help them. My understanding is that in 2015, when this case came down, it was unclear whether there was a requirement to continue periodic statements when the person had gone in bankruptcy, but there was a mortgage. And then in 2018, do I gather that there's still an obligation or not? There is an obligation, but they've defined the circumstances. So, for example, I think now, if you've indicated intent to surrender in your bankruptcy, then post-discharge, those statements don't need to continue. If you specifically requested that they cease and desist sending the statements, now the regulations from 2015 and forward are clear. But there are circumstances where they want you to continue sending, and where they do, they recognize the tension and say that the sending of this form with these disclaimers will be good enough to insulate you from liability under those statutes. I got you. One last question. Should there be a difference and we're talking about 2015 law now, not the 2018 law, which is a little clearer. Should there be a difference between a case where you have one statement and a case where there are continuous statements over a period of a long time, like some of these cases involve years, after a cease and desist letter has been sent? Should there be a difference in those cases? If the statements all have the same exact language, then arguably not. But I can see where a court would act within its discretion to make the determination that the continued over many years sending of those statements, and it's often accompanied by other conduct, like phone calls and other things, would take this to another level and that you could make the objective determination that in that instance, they were intended. For example, if there had been a quitclaim deed in this case, there would be no excuse at all for sending the statement, and therefore it perhaps should be contempt in violation of the discharge injunction. That would certainly be a better argument, that there would be no reason once somebody was out of title to do that here. And that's one distinction that was drawn, for example, in one of the cases that they cite too, the Vanneman case. In the bankruptcy, the person had given up title, so they had no interest at all to be in communication post-discharge. I don't know whether or not the bankruptcy judge abused her discretion or not. We're going to have to conference on that, but I'm looking at the informational statement itself, and if it's truly informational, it could be better constructed than it is. The language, the disclaimer language, is in very small print in the middle of the form, and at the top, it's got amount due, and at the bottom, it's got voluntary payment coupon with another amount due. Don't you think this information, if it's truly for informational purposes only, well, I mean, you can go, you're looking at all these facts and figures on here, and it's just in very small print, and you can miss it. I'll say two things. Number one, it can always be better. I'm sure that in any case, you can always make it clearer and more conspicuous. This disclaimer is on par with what the CFPB prescribed, and it's on par with what this Court blessed under a lower bar in the Hellman case. I encourage the Court to look back at Hellman, and I know it's only persuasive. I was on the panel in Hellman, and, of course, it's unpublished, so it's not binding. But the statements in the record in that case had amounts due, similar language. They had payment instructions and a coupon at the bottom. It was the same thing. It's similar to the CFPB form, and, again, it's abuse of discretion. Was it within the range of possible outcomes? Could any court reading Hellman and reading the CFPB guidelines reasonably conclude that this statement was okay? Absolutely under the abuse of discretion standard. Kennedy. We have your argument, Mr. Godley. Mr. Feinman, you've reserved some time. Your Honor, we believe the Court abused her discretion when she ruled that discharge violation did not occur for several reasons. But, as Your Honor Wilson prescribed, the wrong legal standard was certainly applied here. If you look at the statement, it clearly appears to be a statement that is a billing statement. Looking at the same exact billing statement, Judge Steele of the Middle District in the FDCPA case on this very statement stated, it is true that the informational statement does not expressly state that it is a communication sent for the purpose of collecting debt. But, as just discussed, this absence is not dispositive. The statement lists the total amount due, contains a payment due date, states a late fee will be charged for untimely payment, gives six possible payment methods, separates out from the total amount due all of the fees and costs previously assessed. That is not all. The statement contains a, quote, important messages box advising Ms. Roth that her escrow account has a negative balance and expressly recommending that she make additional payments to avoid an increase to her monthly escrow payment. There is also a detachable payment coupon which states the total amount due and recalculates the amount due for a late payment. Well, if Mr. Godley, if he had another shot, he would say, yeah, but we're interpreting a different statute there. We're interpreting the Federal Debt Collection Practices Act and not the Bankruptcy Act. Understanding that those are the objective factors that are being looked at with what this statement is. With respect to saying it's a voluntary payment coupon, again, that's ambiguous. Is it voluntary to send the payment in? Or is it voluntary to use the payment coupon? Because just above it, it says you can make a payment online at mynationstar.com. There's ambiguity there as to what they mean by voluntary payment. But presumably that payment coupon has changed from before she went through bankruptcy. For people who have mortgage statements, I don't think it says voluntary payment. Well, we don't have any evidence to support that in the record, Your Honor. There was no evidentiary hearing to present any of that or defend on NationStar's grounds. With respect to why no request for an evidentiary hearing was made, and we had this previous hearing where she said she was going to announce ruling. Again, the debtor's position was that, OK, you're going to announce ruling. We assumed it was going to be on a deferential motion to dismiss standard, where all inferences that could be gleaned from the motion are viewed in light most favorable to the debtor. And therefore, clearly, that if you're going to draw inferences, they should be drawn that they're trying to collect the debt. I think everybody's talking here today that it could be this, it could be that. Why would you assume that? I thought the law was clear that it is a contested matter, which is governed by, I think it's Rule 9014, which is, in effect, the bench trial rules. Correct. So theoretically, if 9014 brings it into the Section 7000s, you treat the motion for sanctions as a complaint. And if she's going to deny the complaint, you have to treat the response as a motion to dismiss. When you look at a motion to dismiss, all inferences are drawn in light of the non-moving party, which effectively would be the complainant, the debtor. So under those standards, she used the wrong standard in evaluating the allegations against NationStar and just summarily decided the case. Do you have any case that suggests there's an automatic requirement for an evidentiary hearing in a situation like this where no request is made? I don't have any case that specifically state that, Your Honor. I can say that a lot of the cases that were briefed on the issue here resulted after evidentiary hearings were held and not on a summarial decision based upon those prior cases. But nothing that specifically holds to that effect. No, that's our position that she just used the wrong standard because it should have been done. With respect to the Hellman decision, NationStar keeps citing that as a similar case. But again, the same position of the CFPP language compared to NationStar's chosen language. Here's the language from Hellman. Our records indicate that in the past you received discharge of this debt in a bankruptcy case. Section 524 of the Bankruptcy Code tells us the discharge of this debt means you have no personal obligation to repay it. The discharge also protects you from any efforts by anyone to collect this discharge debt as a personal liability of the debtor. You cannot be pressured to repay this debt. On the other hand, the security agreement allows foreclosure if the requirements under the loan are not met. That is clear, unequivocal, and definitive. NationStar chose to be very ambiguous in their statement, likely to cover any possible scenario that could arise, but that's not the proper method. The bankruptcy, the discharge is meant to protect the debtor, not to make it easier or harder on NationStar to try to send statements that the debtor doesn't even want. How many more ways can this debtor tell NationStar to stop? And they continue to do it anyway. Finally, with respect to the notice of default issue, I don't believe that argument has any merit that they have to send this notice of default. The property was surrendered. This court, Florida courts have held that the debtor can take no action to stand in the way of a foreclosing plaintiff when they surrender the property in bankruptcy. And in Florida, a condition precedent, contractual condition precedent defense is a waivable affirmative defense. So bottom line is they can't raise the affirmative defense of notice of default if they surrender this property. So to say they have to send this letter is, again, disingenuous. And with that, Your Honor, I think we have your argument, Mr. Fineman. I thank you for your time. Thank you.